Case 4:20-cv-04120   Document 82   Filed on 12/07/22 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
December 07, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UV PARTNERS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-20-4120 |
| | § | |
| PROXIMITY SYSTEMS, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

UV Partners, Inc. and Proximity Systems, Inc. both make lamps that use ultraviolet light to disinfect surfaces that people use to interact with various electronic devices. UV Partners alleges that Proximity's products infringe three UV Partners patents. Proximity has filed two motions for partial summary judgment addressing the infringement claim as to one of those patents, U.S. Patent No. 11,219,699. In one motion, Proximity argues that both its allegedly infringing devices and the UV Partners devices practicing the '699 Patent were on sale before the '699 Patent's effective filing date, which is the date UV Partners applied for the '699 Patent. (Docket Entry No. 72). If Proximity is correct, then UV Partners cannot show infringement. In its other motion, Proximity contends that the '699 Patent is invalid because it is anticipated by prior art. (Docket Entry No. 73).

Based on the parties' pleadings, motions, briefs, the summary judgment record, and the relevant law, the court grants Proximity's motion for partial summary judgment, finding the '699 patent invalid based on the effective filing date, the intervening art, and the on-sale bar, but denies Proximity's motion for summary judgment based on 35 U.S.C. §§ 102 and 103. The reasons are set out below.

I.    **Background**

UV Partners filed its original complaint in December 2020 and an amended complaint in April 2021. (Docket Entry Nos. 1, 20). Those complaints asserted only U.S. Patent No. 9,901,652 (issued on February 27, 2018), and No. 10,413,624 (issued on September 17, 2019). (Docket Entry No. 1 ¶¶ 27–28; Docket Entry No 20 ¶¶ 27–28). In February 2022, UV Partners filed its second amended complaint, in which it first asserted the '699 Patent at issue in these motions. (Docket Entry No. 43 ¶ 29). The court issued a memorandum opinion construing disputed claim terms in July 2022, following briefs from the parties and a *Markman* hearing. (Docket Entry No. 66). The court issued another memorandum and opinion construing one more disputed term in August 2022. (Docket Entry No. 71).

The parties agree that using UV light as a disinfectant is far from new. The first invention relevant to the present dispute is the Germ Genie, the application for which was filed in September 2009 as patent application GB 091659. An international application was filed for the Germ Genie in 2011, as WO 2011/033263. That application contains the following independent claim:

> 1. Sterilisation apparatus comprising means for directing a beam of germicidal energy at a target area, means for detecting changes of status in the target area, and means for switching the beam on and off in response to signals from the detecting means.

(Docket Entry No. 73-2 at DEF-PA000080).

In November 2009, an application was filed for U.S. Patent No. 8,110,819 (issued in February 2012), entitled "Computer Peripherals Sterilization System." (Docket Entry No. 73-4). Oleg and David Boyarsky are the credited inventors. The Boyarsky Patent discloses a UV disinfection light "movably mounted above a computer keyboard or other computer peripheral device to be sanitized." (*Id.* at DEF-PA000214, col. 3:17–19). The Boyarsky Patent further discloses a "controller device that monitors the operation, rate and movement of the light source

to assure compliance, as well as prevent use of the peripherals being sanitized unless the disinfection process has been performed properly." (*Id.* at col. 3:25–30).

The history of the '699 Patent begins when UV Partners filed Application No. 14/044,448, entitled "Portable Light Fastening Assembly," on October 2, 2013.[1] The '448 Application contained the specification common to all the patents asserted in this lawsuit, including the '699 Patent. The specification includes the following figures:



(Docket Entry No. 72-6 at APP 14/044,448 - 0076). The specification describes these figures, as follows:

> FIGs. 54 and 55 illustrate the portable light fastening assembly used in connection with a table stand in accordance with an embodiment of the invention. The light

---

[1] Although Proximity's opening briefs in support of its motions assume that UV Partners claims a priority date of May 10, 2010—the date of the '065 Provisional Application—UV Partners states that the priority date it claims is October 2, 2013, when it submitted the '448 Application. (Docket Entry No. 77 at 8).

3

>   and table stand 5400 are used in combination with engagement member 5401 in situations where objects such as tablets, keyboards or the like can be placed under the UV lighting on a table top surface. The table stand 5403 includes a mounting shaft 5405 having an opening 5407 at its top edge. The mounting shaft 5405 may be angled forward and connects at a lower end 5409 to a surface stand 5411. . . . As seen in FIG. 55, when in use in a table top environment 5500, the engagement member 5401 is inserted into the opening 5407 allowing the portable light 5400 to be used on a table top surface so that objects placed [*sic*] under the light for microbial disinfection.

(*Id.* at APP 14/044,448 – 0035–36 ¶ [00150]).

The '448 Application claims "[a] portable light fastening assembly for use with a human interface of an electronic device." (Docket Entry No. 72-7 at APP 14/044,448 - 0038). In January 2016, the '448 Application issued as U.S. Patent No. 9,242,018. The '018 Patent is also entitled "Portable Light Fastening Assembly."

The '699 Patent—also a continuation of the '018 Patent—issued on January 11, 2022. The '699 Patent claims "[a] standalone portable UV lamp for use in disinfecting a human interface device disposed on a surface." (Docket Entry No. 72-1 at 52, col. 21:14–15).

**II.      The Legal Standard**

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial.'" *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). Of course, all reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

III. **Analysis**

    A. **Proximity's Motion for Summary Judgment that the '699 Patent is Invalid Based on the Effective Filing Date, the Intervening Art, and the On-Sale Bar (Docket Entry No. 72)**

Proximity contends that because UV Partners did not disclose the subject matter of the '699 Patent in the '448 Application, it cannot claim the priority date of that Application to support the

5

claimed infringement of the '699 Patent. A later priority date is important because Proximity first offered its allegedly infringing devices for sale in 2018. (Docket Entry No. 72 at 23–24). If the priority date of the '699 Patent postdates the appearance of Proximity's devices on the market, those devices do not infringe the '699 Patent. (*Id.* at 24).

Proximity argues that UV Partners did not disclose the subject matter of the '699 Patent until January 7, 2021, when the '699 Patent was filed. (*Id.* at 14). Proximity argues that "there is no disclosure of a UV standalone table lamp" before UV Partners filed the '699 Patent Application. (*Id.* at 15).

> The invention disclosed in the specification and in the earlier applications for the '018, '652, and '624 Patents is a portable UV light ***fastening assembly*** for disinfecting human interface devices, such as keyboards and touch screens, not a standalone table lamp. . . . In the preceding applications, the invention claimed is consistently defined as a "portable" light fastening assembly "configured to removably attach" the light to an electronic device.

(*Id.* at 16). Proximity argues that the '699 Patent claims, which involve a standalone table lamp, broaden the description of the invention disclosed in the previous UV Partners patents and the Application that the '699 Patent continues. (*Id.* at 18).

UV Partners argues in response that the '448 Patent specification supports each of the '699 Patent claims asserted in this lawsuit. (Docket Entry No. 77 at 7). UV Partners walks through those claims to argue that the standalone table lamp that is the explicit subject of the '699 Patent was conveyed with reasonable clarity in the earlier '448 Patent specification. (*Id.* at 7–9; *see also* Docket Entry No. 77-1 (a chart comparing the '699 Patent claims to the common specification)). UV Partners attacks Proximity's motion for focusing on the standalone table lamp. UV Partners repeatedly directs the court to elements of the specification common to the '699 Patent and the previous UV Partners patents and applications.

6

The question presented by Proximity's motion for summary judgment is whether a reasonable fact finder could find that the '448 Application sufficiently supports the claims of the '699 Patent to enable UV Partners to claim the benefit of the '448 Application's filing date. "It is elementary patent law that a patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112(a)." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting reference omitted). Section 112(a) provides:

> The specification shall contain a written description of the invention . . . in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same . . . .

35 U.S.C. § 112(a). "[A] prior application itself must describe an invention, and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997). While "[c]ompliance with the written description requirement is a question of fact," summary judgment may be granted "in cases where no reasonable fact finder could return a verdict for the non-moving party." *PowerOasis*, 522 F.3d at 1380.

The '448 Application specification states:

> Embodiments of the present application include but are not limited to a portable light fastening assembly . . . that includes a lamp housing and an adjustable attachment device extending from the lamp housing. An ultra-violet (UV) light source is enclosed in the lamp housing where the adjustable attachment device includes an engagement member and a receptacle housing such that the engagement member can be removably fastened within the receptacle housing for holding the lamp housing in a fixed position.

(Docket Entry No. 72-6 at APP 14/044,448 – 0037 ¶ [00153]). Figures 54 and 55 show an embodiment of a table lamp that also has a light fastening assembly. As the specification indicates, Figure 54 shows "the portable light fastening assembly *used in connection with a table stand*."

7

(*Id.* at 0035 (emphasis added)). "The table stand 5403 includes a mounting shaft 5405 having an opening 5407 at its top end." (*Id.* at 0036). The figures illustrate how a portable light fastening assembly can be attached to a base. The figures do not show a standalone table lamp without an "adjustable attachment device." The proposed embodiments disclosed in the common specification show a light that can be affixed to the device to be disinfected, or a light that has a separate mount, such as the stand in Figure 54.

UV Partners argues that Proximity's description of the specification is too limited and instead emphasizes the method of disinfection itself, which all members, including the '699 Patent, of the purported genus share. (*See, e.g.*, Docket Entry No. 77 at 9 ("The specification sets forth a number of embodiments and inventions, including use of an iterative disinfection cycle performed by a processor based on output from a sensor, which cycles the UV disinfecting light from on to off and back on again.")). The common specification makes clear that the embodiments of the invention "include combinations of method steps *and* apparatus components." (Docket Entry No. 72-6 at APP 14/044,448 - 0015 ¶ [0077] (emphasis added)). Intuitively, a table lamp without detachable components seems an obvious variation of a table lamp with detachable components. But "[t]he question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification. Rather, a prior application itself must describe an invention, and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought." *Lockwood*, 107 F.3d at 1572. The '448 Application does not describe the standalone table lamp later claimed in the '699 Patent. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563–64 (Fed. Cir. 1991) ("[T]he applicant must also convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in

possession of the invention. The invention is, for purposes of the 'written description' inquiry, whatever is now claimed.").

In *Atlantic Research Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1353 (Fed. Cir. 2011), cited by Proximity, (*see* Docket Entry No. 72 at 22), the district court construed a patent involving handguards for rifles as claiming an attachment system in which the handguard attached to, and was supported by, a single point on the rifle, the barrel nut. The Federal Circuit affirmed the district court's holding on summary judgment that the written description requirement was not satisfied. Although the claim involved a single attachment point, the patent specification disclosed only handguards with two attachment points: the barrel nut and the upper receiver. *Id.* at 1354. There, as here, the dispute concerned a fundamental characteristic of the invention claimed, but not clearly disclosed, by the specification. There, as here, the claimed invention departed from the specification in a limited but important respect.

Neither party has asked the court to construe potentially relevant terms, such as "standalone" or "portable," in the '699 Patent. The common specification refers to either a "portable light fastening assembly" or "portable light." The term "portable light" is not defined. The term "portable light fastening assembly" is used in the specification only to refer to the fastened or attached UV lamp. The specification uses the term "portable light" to discuss the position of the light in relation to the surface to be disinfected. For example,

> FIG[]. . . . 55 *illustrate[s] the portable light fastening assembly* used in connection with a table stand in accordance with an embodiment of the invention . . . . As seen in FIG. 55, when in use in a table top environment 5500, the engagement member 5401 is inserted into the opening 5407 *allowing the portable light 5400 to be used on a table top surface so that objects placed under the light for microbial disinfection*.

(Docket Entry No. 72-6 at APP14/044,448 - 0035–36 ¶ [00150] (emphasis added)). This passage shows that the term "portable light" is not clearly used in the specification to refer to an

independent table lamp; rather, "portable light" simply refers back to the "portable light fastening assembly" already described.

The table lamp disclosed in Figures 54 and 55 of the common specification is one member of the genus described in the specification, because those lamps, along with the other described embodiments, possess the "structural features common to the members of the genus so that one of skill in the art can 'visualize or recognize' the members of the genus." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1350 (Fed. Cir. 2010). The common specification discloses a genus sharing the structural feature of an assembly that can be detached from either a base—as in Figures 54 and 55—or the human interface device to be disinfected. To put it in the negative, there is no disclosure of an independent structure that does not contain either of these features. Or, to state it positively, the only disclosures are of structures that contain an assembly that can be detached from a base or a device to be disinfected.

Proximity states that the court might "find[] that the term 'attachment mechanism' is embedded in the 'portable' limitation and carries through this entire family of patents because that is the way the invention is defined in the common specification and throughout the prosecution history." (Docket Entry No. 72 at 18). While this might, as Proximity suggests, sustain the validity of the '699 Patent for purposes of the written description requirement, it is impermissible. "While we construe the claims in light of the specification, limitations discussed in the specification may not be read into the claims." *3M Innovative Properties Co. v. Tredegar Corp.*, 725 F.3d 1315, 1321 (Fed. Cir. 2013). The '699 Patent claims a "portable" lamp, but the Patent does not claim an attachment mechanism. The court cannot read an "attachment mechanism" limitation into the claims.

A reasonable fact finder could not conclude that the common specification discloses a "standalone portable UV lamp" or a "standalone portable UV desk lamp" as claimed in the '699 Patent. UV Partners does not dispute that Proximity's products alleged to infringe the '699 Patent were offered for sale before UV Partners filed the Application for the '699 Patent on January 7, 2021.

The court grants Proximity's motion for partial summary judgment, (Docket Entry No. 72), based on the effective filing date and intervening art and on-sale bar.

### B. Proximity's Motion for Summary Judgment that the '699 Patent Is Invalid under 35 U.S.C. §§ 102 and 103 (Docket Entry No. 73)

Proximity also seeks summary judgment on the basis that the '699 Patent is invalid as anticipated by prior art or made obvious by prior art. A patent issued by the United States Patent and Trademark Office is presumptively valid under 35 U.S.C. § 282. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 (2011)). This presumption applies with some unspecified greater force "when the prior art was before the PTO examiner during prosecution of the application." *Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999) (quoting reference omitted).

"If the claimed invention was 'described in a printed publication' either before the date of invention, 35 U.S.C. § 102(a), or more than one year before the U.S. patent application was filed, 35 U.S.C. § 102(b), then that prior art anticipates the patent." *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008). "[T]he anticipation inquiry proceeds on a claim-by-claim basis." *Id*. "The way in which the elements are arranged or combined in the claim must itself be disclosed, either expressly or inherently, in an anticipatory reference." *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010). Invalidity on the basis of anticipation must be shown by clear and convincing evidence. *PowerOasis*, 522 F.3d at 1305.

11

Title 35, U.S.C. § 103(a), prohibits the issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Obviousness is a question of law based on underlying factual determinations. *Insite Vision, Inc. v. Sandoz, Inc.*, 783 F.3d 853, 858 (Fed. Cir. 2015). The underlying factual inquiries include: (i) "the scope and the content of the prior art;" (ii) "the level of ordinary skill in the art;" and (iii) "the differences between the claimed invention and the prior art." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966). Secondary indicators, such as "commercial success, long felt but unsolved needs, [and] failure of others," can "give light to the circumstances surrounding the origin of the subject matter sought to be patented." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 399 (2007) (internal citations and quotation marks omitted). Evidence of secondary considerations "may often be the most probative and cogent evidence [of nonobviousness] in the record." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983). Invalidity on the basis of obviousness must also be shown by clear and convincing evidence. *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003).

Proximity argues that the Germ Genie anticipates and invalidates the '699 Patent. Proximity walks through the independent claims of the '699 Patent and compares those claims to the Germ Genie to show that the '699 Patent is entirely anticipated by the earlier invention. (Docket Entry No. 73 at 5–25).

UV Partners argues that Proximity has not shown anticipation by the Germ Genie alone, but instead improperly relies on a combination of the Germ Genie, a press release and publication about the Germ Genie, and the Boyarsky patent to show anticipation. (Docket Entry No. 73 at 15,

12

18, 24). UV Partners also argues that the Germ Genie does not disclose a key feature of the '699 Patent, the operation of the processor claimed in the Patent. The Patent claims:

> a processor configured to:
>
> automatically enable and disable the UV light source to provide a plurality of iterative UV disinfection cycles; and
>
> automatically disable the UV light source in response to human proximity sensor output.

(*Id.* at 15 (quoting Docket Entry No. 73-1 at 52, col. 21:36–46)). UV Partners notes that the court previously construed the phrase, "a plurality of iterative UV disinfection cycles," as "an automatically repeated series of UV disinfection cycles in which the UV light source is turned ON for a first time interval and then turned OFF for a second time interval in a cycle that may occur more than once." (*Id.* (quoting Docket Entry No. 71 at 7). UV Partners argues that the Germ Genie Application did not disclose an invention that automatically performs UV disinfection cycles. According to UV Partners, the Germ Genie performs a disinfection cycle only after the surface to be disinfected is used. (*Id.* at 17). In other words, the Germ Genie will not perform a disinfection cycle unless it first detects human presence and then no longer detects that presence. The '699 Patent, on the other hand, will automatically perform disinfection cycles even without having detected a human presence followed by its absence. The '699 Patent claims a device that will disinfect a surface contaminated by causes that do not trigger its proximity sensor, for example, by droplets from a sneeze or cough.

In reply, Proximity states that the Germ Genie processor can reasonably be inferred to have the same functionality as the '699 Patent. Proximity notes that the Germ Genie processor is programmable and contains an "automatic control system." (Docket Entry No. 80 at 2–3). Proximity argues that the court's construction of the phrase, "a plurality of iterative UV

13

disinfection cycles," does not require functionality beyond what the Germ Genie discloses. (*Id.* at 3–4).

The parties did not ask the court to construe terms in the '699 Patent related to the programming of the processor in that Patent. Neither party has submitted testimony from a person skilled in the art to aid the court's resolution of Proximity's motion, suggesting that the court should not resolve the issue of anticipation at this stage.

> Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference.

*Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002). Counsels' arguments are no substitute for such expert testimony. On the present record, Proximity has not shown clear and convincing evidence of invalidity based on anticipation or obviousness.

The court denies the motion for summary judgment based on 35 U.S.C. §§ 102 and 103.

## IV. Conclusion

The court grants Proximity's motion, (Docket Entry No. 72), for summary judgment based on the effective filing date, the intervening art, and the on-sale bar.

The court finds the present record inadequate to decide, but need not reach, Proximity's motion, (Docket Entry No. 73), for summary judgment based on 35 U.S.C. §§ 102 and 103, and therefore denies it without prejudice as moot for the purpose of the issues before the court.

The claims by UV Partners for infringement of the '699 Patent are dismissed.

SIGNED on December 7, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge